**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JIMMIE L. WILLIAMS JR.,**

**Plaintiff,**

**-vs-**                                                          **Case No. 6:07-CV-212-ORL-KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

_____

**ORDER**

This cause came on for consideration without oral argument on the Complaint

filed by Jimmie L. Williams, Jr., seeking review of the final decision of the Commissioner

of Social Security denying his claim for social security benefits.  Doc. No. 1.  The

Commissioner answered the Complaint and filed a certified copy of the record before the

Social Security Administration (SSA).  Doc. No. 10, 11.  Thereafter, counsel for Williams

filed additional documents that were not included in the certified copy of the record

submitted by the Commissioner. Doc. No. 17-2.  Pursuant to the consent of the parties,

this matter has been referred to me for disposition under 28 U.S.C. § 636(c).  Doc. Nos.

15, 16.

**I.      PROCEDURAL  HISTORY.**

In May 2003, Williams applied for disability benefits under the Supplemental

Security Income for the Aged, Blind and Disabled Program (SSI), 42 U.S.C. § 1381, *et*

*seq*. (sometimes referred to herein as the Act).  R. 59-63. He alleged that he became

disabled on November 26, 1991. R. 59.  Williams' application was denied initially and on

reconsideration. R. 44-47, 50-53.

Williams requested a hearing before an administrative law judge (ALJ).  R. 39.  An

ALJ held a hearing on April 6, 2006.  Williams, who was not represented by counsel or

by a nonattorney representative, testified at the hearing.[1]  Susanna D. Roche, a

vocational expert (VE), also testified.  R. 208, 262-96.

After considering the testimony and the medical evidence presented, the ALJ

found that although Williams had worked, his work did not constitute substantial gainful

activity at any time relevant to the decision. R. 23.

The ALJ concluded that the medical evidence showed that Williams had a history

of back pain following spinal fusion surgery and degenerative disc disease of the lumbar

spine, which were severe impairments.  R. 23.  These impairments did not meet or equal

any of the impairments listed in the applicable social security regulations (the Listings).[2]

R. 24.

The ALJ acknowledged that Williams reported a history of treatment for

depression.  A consulting psychologist who examined Williams in June 2004, diagnosed

---

[1] Williams does not contend that his waiver of the right to representation, R. 224, was invalid.

[2] The Code of Federal Regulations "contains a Listing of Impairments specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories."  *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

Williams with major depression.  The ALJ gave little weight to that assessment because the examiner described Williams' presentation as questionable, and Williams had not received mental health treatment in two years.  The ALJ concluded that Williams' mental impairment would result in only mild limitations in activities of daily living, social functioning and attention and concentration, and there was no evidence of repeated episodes of decompensation.  Therefore, the ALJ concluded that Williams' mental impairment was not severe.  R. 24.

The ALJ found that Williams had the residual functional capacity (RFC) to perform light work, specifically to lift 20 pounds occasionally and 10 pounds frequently, and to sit, stand or walk about 6 hours in an 8-hour workday.  R. 24.  In reaching this decision, the ALJ considered the limitations caused by pain.  The ALJ found that, while Williams had medical impairments that could reasonably be expected to produce the alleged symptoms, his statements about the extent of the limitations was not entirely credible. R. 25.

The ALJ discounted the opinion of a consulting physician who examined Williams in December 2003 because the claimant had not received any significant medical treatment in over two years.  Although the ALJ recognized Williams' inability to afford medical treatment, he wrote that "if [Williams] were in as much pain and limited as alleged . . . he would have sought free or reduced fee medical treatment through the state in which he lives."  R. 25.  Instead, the ALJ gave significant weight to the opinions of physicians who reviewed Williams' records but did not examine him.  R. 26.

The ALJ concluded, after considering testimony from the VE, that Williams could return to his past relevant work as an inventory clerk.  R. 26.  Therefore, he found that Williams was not disabled. R. 26.

After the ALJ rendered his decision, present counsel for Williams appeared as Williams' representative.  R. 17.  Williams sought review of the ALJ's decision by the Appeals Council.  R. 16.  He submitted additional medical records to the Appeals Council.  Some of these records are included in the certified copy of the record before the Court.  R. 11.

Other records submitted to this Court as exhibits to Williams' memorandum of law are not in the certified record.  R. 17-2 at 4-8.  While the Commissioner submits that these records were not received before the Appeals Council rendered its decision, doc. no. 17-2 at 10, it offered no evidence to support that conclusion.  Williams, on the other hand, submitted a copy of the return receipt which reflects that these records were received by the Appeals Council on November 24, 2006.  R. 17-2 at 3.

On November 27, 2006, the Appeals Council found no basis for changing the ALJ's decision.  R. 12.  On December 20, 2006, the Appeals Council set aside its November 27, 2006, decision to consider additional information.  R. 7-8.  Its new decision, however, found no basis for changing the ALJ's decision.  *Id*.  Williams timely sought review of this decision by this Court.  Doc. No. 1.

By letter dated April 13, 2007, an ALJ acknowledged receiving the medical records that are not included in the certified record before the Court.  This ALJ, who was not the ALJ who rendered the original decision, stated that the additional evidence had

been reviewed and that the Appeals Council concluded that no change in the prior action was warranted.  R. 17-2 at 10.

## II.  JURISDICTION.

Plaintiff having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

## III.  STATEMENT OF FACTS.

Many of the essential facts of record are set forth in the ALJ's decision and in the parties' memoranda.  Accordingly, I will only summarize the pertinent facts to protect Williams' privacy to the extent possible.

Williams was 46 years old on the date of the hearing.  R. 269.  He went to school to the twelfth grade, but he did not graduate or obtain a GED.  R. 270.

Williams injured his back at work in 1982.  R. 275, 290-91.  He had a series of back surgeries thereafter, and ultimately spinal fusion surgery was performed in 1991. R. 275.  He tried to work after the fusion surgery, but he was not able to do so because of back and leg pain.  R. 82, 271, 289-90.

For instance, in 2002 to 2003 Williams worked as a call estimator, also referred to as an inventory clerk.  R. 67, 283-84, 289.  In this job, he was required to determine after a moving company completed its work whether anything had been damaged and, if so, write a damage claim.  R. 290.  He estimated that in that job he walked, sat and stood for 4 hours a day, and lifted up to 10 pounds, but he was not required to engage in postural activities.  R. 67-68, 79.  He worked at that job full-time for 9.5 months, but was not able

to continue due to back pain.  R. 67, 271, 284.

After the spinal fusion surgery, Williams' treating doctors initially permitted him to return to work with lifting and postural limitations.  R. 276.  On June 3, 1997, Joseph B. Billings, D.O., opined that Williams should not work.  R. 129.  The next month, Dr. Billings permitted Williams to return to light duty work with no climbing or bending, no prolonged sitting or standing, and no lifting over 10 pounds.  R. 128.  Gregory Munson, M.D., noted that Williams' fusion was solid, but that he had degenerative disc disease. R. 117, 126-27.  He opined in July 1997, consistently with Dr. Billings, that Williams could perform light duty with lifting up to 10 pounds with limited bending and stooping. R. 127.

Thereafter, Williams' condition worsened R. 276.  Records presented to the Appeals Council contain results of an MRI taken in April 1999 that revealed disc degeneration in Williams' lumbar spine with central posterior annular tearing and bulging. R. 257, 260. As of August 1999, Dr. Munson opined that Williams was permanently and totally disabled.  R. 110.  There are no subsequent findings of treating physicians that indicate that Williams had the capacity to return to work.

Williams testified that he could not regularly seek medical treatment after his worker's compensation case concluded, except for when he was covered by his wife's insurance.  R. 276-77.  Nevertheless, the medical records before the Court confirm Williams' consistent complaints of pain when he did seek treatment.  Physicians credited these complaints of pain and prescribed a variety of medications to deal with the pain. *See, e.g.,* R. 101-02, 109-10, 113-15, 117, 123, 129, 233, 237, 240, 241-42, 259, 261.

Nitin Haté, M.D., examined Williams on December 1, 2003, at the request of the SSA.  At that time, Williams complained of back pain radiating into his right leg with numbness in both legs.  He also had pain in his knees and left shoulder.  Dr. Haté observed that Williams' gait was normal.  R. 135.  He noted that Williams had diminished sensations in sacroiliac distribution bilaterally.  His muscle strength was normal.  His range of motion was reduced in the thoracolumbar spine, and he was restricted in his ability to squat.  R. 136.  Dr. Haté opined that Williams might have some difficulty in strenuous activities, repetitive stooping, squatting and lifting weights secondary to pain. R. 137.

Gloria Hankins, M.D., rendered an RFC opinion in December 2003 after reviewing Williams' medical records.  She opined that Williams could occasionally lift 20 pounds and frequently lift 10 pounds.  He could sit, stand or walk about 6 hours a day.  R. 139. He could only occasionally stoop and crouch.  R. 140.  In April 2004, Michael A. Pollack, M.D., another reviewing physician, concurred with Dr. Hankins' RFC assessment, except that he opined that Williams could only occasionally engage in any postural activity and would have a limited ability to reach overhead.  R. 147-49.

In October 2005, Joseph C. Flynn, Sr., M.D., examined Williams.  Upon examination, Dr. Flynn observed that the range of motion in Williams' back was "significantly guarded and moderately limited in all planes."  R. 241.  X-rays revealed slipping of the L3 vertebra on the L4 vertebra (retrolisthesis) and mild lumbar spinal narrowing (stenosis) with instability on flexion and extension at L3-L4.  R. 242.

The records submitted to the Appeals Council, but not included in the certified copy of the record, reflect that Jeffrey C. Fernyhough, M.D., examined Williams on November 17, 2006.  R. 17-2 at 8.  Dr. Fernyhough's assessment was that Williams had degeneration and a tear shown on a lumbar discogram and stenosis with a hip capsule tear.  *Id.* at 5-6.  Dr. Fernyhough's underlying examination records, if any, are not included in Williams' submission.  Dr. Fernyhough opined that Williams would not be able to perform even sedentary work 8 hours a day 5 days a week on a reliable and sustained basis.  *Id.* at 4.

Written reports submitted to the SSA by Williams and medical records reflect that Williams also reported that he was suffering from depression.  R. 48, 86, 94, 108.  In December 2003, he wrote that he was hearing voices and had difficulty concentrating.  R. 86, 88.  One of Williams' friends wrote that Williams talked to himself, thought everyone was out to get him and that Williams had difficulty concentrating and was forgetful.  R. 90, 92-93, 98.  Williams sought treatment at Lakeside Alternatives in April 2004.  R. 154.  The assessment of the intake professional was that Williams had a global assessment of functioning score of 45, indicative of serious limitations in functioning.[3]  R. 157.

William Austin, Psy.D., examined Williams regarding his mental condition in June 2004, at the request of the SSA.  Williams reported that he had a depressed mood, was

---

[3]   The Global Assessment of Functioning ("GAF") scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, unable to care for self, or serious suicidal act).  *Diagnostic and Statistical Manual of Mental Disorders - Fourth Edition* 32 (4th ed. 1994)(hereinafter the "*DSM-IV*").  A GAF score between 41 and 50 is defined as serious symptoms or any serious impairment in social, occupational, or school functioning.  *Id.*

irritable, had crying spells, suicidal ideation, hallucinations and he was socially isolated. R. 163-64.  Dr. Austin noted that it was difficult to assess Williams' thought process because of his "avoidant behavior." Williams demonstrated difficulty with long and short-term memory, and his judgment, impulse control, and insight were poor.  R. 164. Dr. Austin opined that Williams had a major depressive disorder, recurrent, moderate with the need to rule out a psychotic disorder.  He also had a personality disorder with avoidant and dependant personality traits.  R. 164.  Dr. Austin noted that Williams was not capable of managing his own funds and that his social functioning and other functional ability was poor.  R. 164.

A clinical psychologist who reviewed Williams' records in August 2004, opined that Williams had only mild limitations in activities of daily living, social functioning and concentration, persistence and pace with no episodes of decompensation of extended duration.  R. 176.

At the ALJ's hearing, Williams testified that he had hip and leg pain that was not relieved by medication or physical therapy.  R. 84, 281, 282.  The record before the ALJ reflected that medication caused Williams to have an upset stomach, diarrhea, nausea, lightheadedness, dizziness, drowsiness, and a slow heart beat.  R. 84, 110.  Pain prohibited Williams from dressing, taking a bath and, sometimes, from turning.  If he sat for too long, his legs became numb.  He could walk not more than one block.  He could stand 5 to 10 minutes at a time.  R. 281.  He could lift 5 to 10 pounds.  He had pain when bending to ties his shoes.  R. 282.  His knees had also begun to hurt.  R. 283.

The VE testified that Williams' past work as an inventory clerk required a medium level of exertion as performed nationally, but a light level of exertion as Williams performed the job.  R. 292. The ALJ asked the VE to assume the following hypothetical claimant

> [A] younger individual.  He has a 12th grade education with no diploma; work experience as [the VE described]. . . . [H]e can occasionally lift and/or carry 20 pounds and frequently 10 pounds; stand and/or walk and/or sit about 6 hours in an 8 hour work day; push and pull is unlimited. . . . [H]e's restricted occasionally [from] stooping and crouching.  From a mental standpoint his restrictions of activities of daily living, difficulties in social functioning and in maintaining concentration, persistence or pace are mild.

R. 292-93.  The VE opined that with this RFC, the hypothetical individual could perform Williams' past work as an inventory clerk as he performed it, but not as described in the *Dictionary of Occupational Titles* (DOT).  R. 293.  In response to a follow-up question, the VE opined that if the hypothetical individual were limited to sedentary work, he could not perform Williams' past work as an inventory clerk.  R. 294.

## IV.    STANDARD OF REVIEW.

To be entitled to disability benefits under SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).  A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits.  In sum, an ALJ must apply the following criteria, in sequence:

(1) Is the claimant presently unemployed?

(2) Is the claimant's impairment severe?

(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?

(4) Is the claimant unable to perform his or her former occupation?

(5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. § 416.920(a)(4).  An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability.  A negative answer leads to a finding of "not disabled."  *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1987).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395

F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

## V.    ANALYSIS.

Williams contends that the ALJ erred by failing to address the functional limitations arising from side effects of his medication and properly to assess the functional limitations arising from pain.  He further contends that the Appeals Council erred by failing to include the evidence submitted on November 24, 2006, in the record before rendering its November 27, 2006 decision, and by failing to review all of the evidence in the record before making the decision reflected in the April 13, 2007 letter.

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Among other things, this includes a "duty to investigate the possible side effects of medications taken by a claimant." *McDevitt v. Comm'r*, 241 Fed. Appx. 615, 619 (11th Cir. 2007)(citing *Cowart,* 662 F.2d at 737)).  The United States Court of Appeals for the Eleventh Circuit has recently stated, in a decision reversing a decision of the Commissioner of Social Security, that "[i]t is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability."  *Id.*

In the present case, Williams presented reports to the SSA about the side effects of his medication.  The ALJ did not ask Williams about side effects of medication during the hearing, and he did not reference the reported side effects in his decision.  Accordingly, based on the Eleventh Circuit's instruction in *McDevitt*, remand is required for consideration of the functional limitations arising from the side effects of Williams'

medication.

On remand, the ALJ must consider the record as a whole in determining the functional limitations arising from Williams' complaints of pain and other subjective symptoms arising from his physical and mental impairments, as well as the side effects of medication.  To the extent within the relevant time period, the review must include a discussion of the opinions of treating physicians that Williams was disabled and the weight given to those opinions.  *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)("The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.").

The ALJ must also ensure that the record is complete regarding Williams' medical treatment, especially in light of his credibility finding based on Williams' failure to seek medical treatment. The file reflects that Williams was treated at Jewitt Orthopaedic through March 2002 by Drs. Munson and Billings.  *See* R. 101.  Williams wrote in a disability report that he was treated by Dr. Keith Gray from January through August 2003, R. 69, but it does not appear that Dr. Gray's records are in the Commissioner's file.

**VI.    CONCLUSION.**

For the reasons set forth herein, it is **ORDERED** that the decision of the

Commissioner is **REVERSED** and the case is **REMANDED** under sentence four of 42

U.S.C. § 405(g) for further proceedings.  The Clerk of Court is directed to issue a

judgment consistent with this Order and, thereafter, to close the file.

**DONE** and **ORDERED** this 26th day of February, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE